Mark Antoine Foster, In Pro Per
200 Corpus Cristie Road #A
Alameda, California 94502
(415) 756-1611
(619) 646-3564

FILED
APR - 2 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARK ANTOINE FOSTER,

    Plaintiff,

vs.

ARAMARK SPORTS, LLC and ARAMARK CORPORATION, and DOES 1 through 73,

    Defendants
_____/

Case No. **C-08-01336 MHP**

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS MOTION TO DIMISS PLAINTIFF'S COMPLAINT;DECLARATION OF MARK ANTOINE FOSTER IN SUPPORT THEREOF AND EXHIBITS 1 THRU 12 ATTACHED THERETO
[FRCP 12(B)(6)]

Date: April 28, 2008
Time: 2:00 pm

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On or about February 7, 2008, Plaintiff Mark Antoine Foster filed four almost identical lawsuits against four corporations including claims for fraud and intentional deceit pursuant to California Civil Codes sections 1572, 1709 and 1710; mail fraud, wire fraud and conspiracy to mail fraud, intentional infliction of emotional distress and negligent infliction of emotional distress.

1    Plaintiff filed the lawsuits against: 1) his former employer Aramark Sports, LLC and

2 Aramark Corporation, 2) his former employer Aramark's workers compensation attorneys The

3 Law Offices of Gray and Prouty, and C. Kempton Letts and Dana Mitchell as individuals, 3) his

4 former Employer Aramark's employment law attorneys Morgan Lewis & Bokius, and Eric

5 Meckley as an individual, and 4) his former employer Aramark's third party administrator for

6 their worker's compensation claims, Specialty Risk Services, and Gretchen Devine as an

7 individual.

8    Plaintiff now brings his opposition to Defendant's motion to dismiss his complaint, on

9 the grounds that his complaint does state claims upon which relief can be granted as a matter of

10 law.

11    Furthermore, Defendants' motion to dismiss Plaintiff's complaint is without merit, is

12 baseless and includes statements and conclusions that are ignorant of facts, the law and the acts

13 of the Defendants.

14                           **II. Opposing Argument**

15    **1) Justifiable Reliance**

16    Defendants sole defense against the claim of fraud and intentional deceit is based on their

17 allegation that Plaintiff fails to allege that he relied on a misrepresentation. Defendants state and

18 or imply on page 5, lines 19-20 and continuing on page 6, lines 1-6, of their motion to dismiss,

19 that because Plaintiff refused to sign and agree that he resigned on May 1, 2007 that he does not

20 claim that he actually relied on Defendants' alleged misrepresentation. Also, because he chose to

21 change the date of the resignation to its correct date and sign the agreement stating he voluntarily

22 resigned on June 15, 2006 and not May 1, 2007, and therefore he did not rely on such

23 misrepresentation when he signed the document. Here Defendants do not deny that Plaintiff was

24 presented with a misrepresentation.

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF                    2
   OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

1   Plaintiff alleges that the misrepresentation that he relied on was not refusing to sign the
2   agreement dated May 1, 2007, but the agreement dated June 15, 2006, after he altered it, as he
3   was not aware at that time that he signed it that the defendants were planning to use it to void-out
4   the agreement he signed on March 28, 2006, stating that he would return to work on June 15,
5   2006. Plaintiff did not know this because he did not know at that time that he was wrongfully
6   terminated and had been subject to disability discrimination.
7   Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 1, is a true and
8   correct copy of the Voluntary Resignation agreement that plaintiff signed on March 28, 2006.
9   Plaintiff contends that he did not rely on the misrepresentation- the agreement dated May
10  1, 2007, as he recognized its falsity, but he did rely on the agreement after he altered it to reflect
11  June 15, 2006, the actual date he was forced to resign pursuant to the agreement he signed on
12  March 28, 2006. Defendants' purpose for creating the document and requesting Plaintiff to sign
13  it was so they could cover-up the agreement he signed on March 28, 2006, because Defendants
14  knew, as well as their attorney, Mr. Meckley, the March 28, agreement proves they wrongfully
15  terminated Plaintiff and subjected him to disability discrimination. Plaintiff also alleges that the
16  reason he did not agree to the May 1, 2007 date was because he simply did not want to lie and
17  say he resigned on a date that he did not resign.
18  Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 2, is a true
19  and correct copy of the Voluntary Resignation agreement that plaintiff signed on or around May
20  7, 2007 displaying the June 15, 2006 date.
21  "Whether reliance is justified is a question of fact for the determination of the trier of
22  fact. The issue is whether the person who claims reliance was justified in relying on the
23  representation in light of his own knowledge and experience. (Gray v. Don Miller & Asc., Inc.
24
25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
    OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

3

1  (1984) 35 Cal.3d 498, 503 [198 Cal. Rptr. 551, 674 P.2d 253].Cicone v. URS Corp, 183 Cal.
2  App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804
3       Defendants knew at that time, on or around May 1, 2007, when they presented the May 1,
4  2007 agreement that Plaintiff had not yet realized that he had been wrongfully terminated and
5  subjected to disability discrimination, the defendants knew this because Plaintiff had not
6  included these claims in his complaint filed on March 9, 2007. Defendants proactively moved to
7  shield their wrongdoing by obtaining the agreement so they could use it in the event Plaintiff did
8  discover the wrongdoing, and claim wrongful termination and disability discrimination. Plaintiff
9  alleges that the Defendants figured that if they could somehow get him to sign an agreement
10 stating he voluntarily resigned sometime after June 15, 2006, they would be in the clear and
11 Plaintiff would never know of the wrongful termination and disability discrimination,(other than
12 the constructive discharge Plaintiff alleged in his complaint).When Plaintiff refused to sign the
13 document dated May 1, 2007, Plaintiff believes this "threw them off". So, after not being
14 successful in obtaining Plaintiff's signature on the May 1, 2007 agreement they decided to use
15 the agreement anyway to still void-out the March 28, 2006 agreement.
16      Plaintiff alleges that he may have never realized the wrongful termination and disability
17 discrimination if Defendants had not proactively tried to cover it up.
18      Plaintiff signed the agreement relying on it as being safe as a confirmation as to when and
19 how he actually voluntarily quit pursuant to the March 28, 2006 agreement. Plaintiff did not
20 know how the Defendants were going to later use it. Plaintiff alleges that there would be no
21 justifiable reliance only if he had not signed the agreement at all.
22      "Only '[if] the conduct of the plaintiff [in relying upon a misrepresentation] in the light of
23 his own intelligence and information was manifestly unreasonable' will he be denied recovery.
24 (Hefferan v. Freebairn, [*206] supra 34 Cal.2d at p 719)"( Winn v. McCulloch Corp. (1976) 60

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
   OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

4

1  Cal.App.3d 663, 671 [131] Cal. Rptr. 597], Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal

2  Rptr. 887; 1986 Cal. App. LEXUS 1804

3  "The misrepresentation must be of a material fact essential to the analysis undertaken by

4  the plaintiff and such that the plaintiff would not have acted as he did without it. Roddenberry v.

5  Roddenberry, 44 Cal.App. 4, 634, 655, 51 Cal. Rptr. 2d 907 (1996)

6  Defendants state further on lines 7-12 on page 6, that even if Foster had actually relied on

7  a misrepresentation, (which Plaintiff now alleges that he did), he fails to allege there was any

8  damage resulting from such reliance, or how he has suffered any injury as a result of Defendants'

9  actions, and that Foster merely offers a conclusory statement that defendants actions were an

10 attempt to cover-up his disability discrimination claim, yet he fails to allege how this is so, or

11 what damages he has suffered as a result.

12 Plaintiff alleges that he did rely on a misrepresentation by Defendants, and he does not

13 fail to allege damage resulting from such reliance, and has suffered injury as a result of

14 Defendants' actions and he does not just merely offer a conclusory statement or fail to allege

15 how this is so or what damages he has suffered as a result.

16 Subsequent to filing this complaint, Plaintiff realized he possessed evidence showing

17 Defendants intent to defraud him; using the agreement as Plaintiff predicted and stated how

18 Defendants were going to use it, as Plaintiff stated how he anticipated they were going to use it

19 in his complaint.

20 "While the complaint has not been carefully drawn in this regard, it appears there is a

21 reasonable possibility the paucity of facts regarding a justifiable reliance can be cured by

22 amendment and the demurrer should be not sustained without leave to amend on this ground. (

23 Lingsch v. Savage (1963) 213 Cal App. 2d 729, 739-740 [29 Cal.Rptr. 201, 8 A.L.R. 3d 537] n3

24 Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
   OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

5

**2) Intent**

On or around January 11, 2008, during Plaintiff's court appointed Early Settlement Conference (ESC) Aramark and their attorney Eric Meckley presented the new agreement Plaintiff signed on or around May 7, 2007 in attempt to cover up their wrongful termination and disability discrimination of Plaintiff. In addition to distributing their ESC statement to Plaintiff, Aramark was required to distribute their ESC statement to the San Francisco Superior Court Commissioner Arlene Borick, as she is the coordinator of the program, and to the panelist attorneys Highman, Highman & Ball and Ronald Sousa & Asc.

" The defendant must intend to induce the plaintiff to alter his or her position to his or her injury or risk. Cal Civ. Code 1710. The intent to defraud or deceive is not required; the plaintiff need only prove the defendants intent to cause another to alter his position. Nathanson v. Murphy, 132 Cal App. 2d 363, 369-70, 282 P. 2d 174 (1955).

In Plaintiff's complaint on page 8, lines 12-22, Plaintiff explained how even though Defendants were not successful in getting him to sign and agree he resigned on May 1, 2007, they planned to use the agreement anyway to void-out the original agreement signed on March 28, 2006. Defendants planned on using the agreement to say that plaintiff resigned on June 15, 2006; to give the impression that he was not forced to resign pursuant to the March 28, 2006 agreement and that he voluntarily resigned on his own. Plaintiff also explained that the mere existence of any voluntary resignation agreement created after his employment had already ended was a fraud, because he had already resigned or was forced to resign pursuant to the March 28, 2006 agreement, and no other agreement was necessary.

"Predictions or representations as to what will happen in the future are normally treated as opinion; but often they may be interpreted as implying knowledge of facts , which [*203] makes [***13] the predictions probable. If the defendant does not know of such facts, the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

6

1  statement is an actionable misrepresentation. (See Rest. 2d Torts, 539.) Cicone v. URS Corp, 183

2  Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

3  " Wherever a party states a matter which might otherwise be only an opinion, and does

4  not state it as the mere expression of his own opinion, but affirms it as an existing fact material to

5  the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as

6  such, then the statement clearly becomes an affirmation of fact within the meaning of the general

7  rule, and may be a fraudulent misrepresentation.'(2 Pomeroy's Equity Jurisprudence, sec 878.)" (

8  Crandall v. Parks (1908) 152 Cal. 772, 776 [ 93 P. 1018]. Cicone v. URS Corp, 183 Cal. App.3d

9  194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

10  "A single false representation as to a material fact made with the intent to defraud and

11  relied upon by another party supports an action for fraud. Sears v. Myerson, 106 Cal. App., 220,

12  222-23, 289 p. 173 (1930).

13  Attached to the Declaration of Mark Antoine Foster as Exhibit 3, are true and correct

14  copies of pages 11, I, and Exhibit 6 of Aramark's ESC statement evidencing the presentation of

15  the new agreement and the intent to cover-up the March 28, 2006 agreement.

16  Aramark demonstrated or showed their intent to defraud Plaintiff when they presented the

17  new agreement along with the premise or accusation that Plaintiff voluntarily quit on his own

18  and not pursuant to the March 28, 2006 agreement.

19  " A statement of what the defendant or some third person intends to do relates to an

20  existing state of mind, and is a representation of fact. (4Witkin, Summary of Cal. Law, op. cit

21  supra, 453, p. 2717.) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal.

22  App. LEXUS 1804

23  " True statements can form the basis of false representation if they are made in a manner

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF                    7
    OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

1  designed to create a false impression and were so acted on." Smith v. Brown, 59 Cal. App. 2d
2  836, 838, 140 p. 2d 86 (1943)

3  **3) Knowledge of Falsity**

4  " The misrepresentation that forms the backbone of an intentional deceit claim can be
5  either a positive statement or the failure to disclose a fact that is true. An Affirmative false
6  representation or a known concealment of information material to the circumstance will provide
7  the necessary misrepresentation element." Cal. Civ Code 1572; Gonzales v. Hodgsen, 38 Cal. 2d
8  91, 237 p. 2d 656 (1951)

9  Plaintiff alleges the following:

10  a)   Aramark and Defendant Attorney Meckley presented the fraudulent document to the
11       Court when he distributed it the San Francisco Superior Court and to Plaintiff and the
12       panelists participating in the Early Settlement Conference.
13  b)   Aramark and Attorney Meckley knew exactly when Plaintiff's employment ended
14  c)   Aramark and Defendant Attorney Meckley knew from evidence derived from their
15       own discovery of Plaintiff in the employment Discrimination case against them that
16       Plaintiff resigned pursuant to Voluntary Agreement he signed on March 28, 2006, as
17       Aramark and Defendant Attorney Meckley possesses a copy or that agreement.
18  d)   Aramark and Defendant Attorney Meckley knew the voluntary resignation agreement
19       (VRA) Plaintiff signed on May 7, 2007 was a fraudulent document because they
20       knew its purpose was to void-out Plaintiff's VRA signed on March 28, 2006.
21  e)   Aramark and Defendant Attorney Meckley knew Plaintiff was terminated or resigned
22       pursuant to the VRA Plaintiff signed on March 28, 2006 when he did not return to
23       work or June 15, 2006.

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
    OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

8

f) Aramark and Defendant Attorney Meckley knew that they wrongfully terminated Plaintiff pursuant to the contract signed on March 28, 2006 because they knew through their own discovery they did not offer Plaintiff a reasonable accommodation to his disability before terminating plaintiff, as Defendants admitted the only action initiated by Aramark to secure Plaintiff's position was Executive Sous Chef Tim Miller calling Plaintiff to inquire whether or not he was returning to work, which was not offering him a reasonable accommodation. It was not Mr. Miller job to offer Plaintiff a reasonable accommodation unless, James Chan the personell manager, whose job was to reach out to Plaintiff and offer him a reasonable accommodation, had instructed him to do so. Mr. Chan knew Plaintiff was disabled and failed to engage in the interactive process with Plaintiff to help secure his job. Plaintiff alleges if they had not been so eager to terminate him and wanted him to return healthy and fit to return to work, they would have reached out and made more of an effort to help secure his position. They also would have made sure they engaged in the interactive process with Plaintiff so they could be sure he was offered that reasonable accommodation. The law requires employers to offer that reasonable accommodation to an disabled employee whether or not he asks for it or not because a disabled employee may not know he can ask for a further reasonable accommodation because he is disabled, especially mentally disabled as Plaintiff was. Plaintiff was actually terrified to return to work at that time due to being constructively discharged. If Defendants had reached out to Plaintiff and made him feel that it was ok to return to work, and that they had corrected the harassment problems and initiated an effective investigation regarding his complaints, maybe Plaintiff would have felt more secure about returning to work on June 15, 2006 like he had hoped he could, but that was

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

9

1     not the situation. Plaintiff felt at that time if he returned he would be subject to further

2     retaliation, and as mentioned, Plaintiff was still disabled.

3   g)  Aramark and Defendant Attorney Meckley knew that the voluntary Resignation

4     agreement Plaintiff signed on or around May 7, 2007 was being used to cover-up

5     Aramark's wrongful termination of plaintiff.

6   h)  Aramark and Defendant Attorney Meckley knew presenting the VRA signed on May

7     7, 2007 in the Early Settlement Conference on January 11, 2008, as if Plaintiff had

8     resigned pursuant to it instead of the VRA he signed on March 28, 2006 was fraud

9     and intentional deceit.

10  i)  Aramark and Defendant Attorney Meckley knew when Plaintiff signed the VRA on

11     or around May 7, 2007, stating he resigned on June 15, 2006, it was just to confirm he

12     voluntarily resigned pursuant to the VRA he signed on March 28, 2006, and that's

13     why Plaintiff altered the date on the new VRA to June 15, 2006 from May 1, 2007, as

14     his client Aramark first presented a date of plaintiff's Resignation as of May 1 2007,

15     and as they expected him to agree that he resigned on that date, which was over a year

16     after Plaintiff's employment ended with his client Aramark.

17  j)  Aramark and Defendant Attorney Meckley knew when Plaintiff signed the new VRA

18     it was not to void out or disregard the VRA signed on March 28, 2006 as if it did not

19     exist or Plaintiff was not terminated pursuant to it, but to the contrary.

20  k)  Aramark and Defendant Attorney Meckley consciously ignored and disregarded and

21     suppressed the fact that plaintiff was terminated pursuant the VRA he signed on

22     March 28, 2006, and knew Plaintiff was terminated pursuant the VRA he signed on

23     March 28, 2006. Aramark and Defendant Attorney Meckley attempted to defraud

24     Plaintiff into believing that they did not wrongfully terminate him and that because

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

not the situation. Plaintiff felt at that time if he returned he would be subject to further retaliation, and as mentioned, Plaintiff was still disabled.

g) Aramark and Defendant Attorney Meckley knew that the voluntary Resignation agreement Plaintiff signed on or around May 7, 2007 was being used to cover-up their Aramark's wrongful termination of plaintiff.

h) Aramark and Defendant Attorney Meckley knew presenting the VRA signed on May 7, 2007 in the Early Settlement Conference on January 11, 2008, as if Plaintiff had resigned pursuant to it instead of the VRA he signed on March 28, 2006 was fraud and intentional deceit.

i) Aramark and Defendant Attorney Meckley knew when Plaintiff signed the VRA on or around May 7, 2007, stating he resigned on June 15, 2006, it was just to confirm he voluntarily resigned pursuant to the VRA he signed on March 28, 2006, and that's why Plaintiff altered the date on the new VRA to June 15, 2006 from May 1, 2007, as his client Aramark first presented a date of plaintiff's Resignation as of May 1 2007, and as they expected him to agree that he resigned on that date, which was over a year after Plaintiff's employment ended with his client Aramark.

j) Aramark and Defendant Attorney Meckley knew when Plaintiff signed the new VRA it was not to void out or disregard the VRA signed on March 28, 2006 as if it did not exist or Plaintiff was not terminated pursuant to it, but to the contrary.

k) Aramark and Defendant Attorney Meckley consciously ignored and disregarded and suppressed the fact that plaintiff was terminated pursuant the VRA he signed on March 28, 2006, and knew Plaintiff was terminated pursuant the VRA he signed on March 28, 2006. Aramark and Defendant Attorney Meckley attempted to defraud Plaintiff into believing that they did not wrongfully terminate him and that because

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

10

he signed the new VRA he was not entitled to claim wrongful termination, as if he resigned on his own.

l) Aramark knew that they had forced or coerced Plaintiff to sign the agreement by instructing their workers compensation attorneys Gray and Prouty not to release Plaintiff's already agreed upon worker's compensation check of $5,500 until he signed the agreement.

m) Aramark and Attorney Meckley knew that Attorney Meckley actions constitute a Breach of Fiduciary Duty as an attorney due to Attorney Meckley knowing the new agreement was a fraudulent document and being used for fraudulent purposes, and the fact that he was helping his client Aramark preserve and present the document.

n) Aramark and Attorney Meckley knew the truth of the matter, which proves they knew the falsity of the document.

o) Aramark and Attorney Meckley knew the truth as to when, how and why Plaintiff was terminated, as they knew Plaintiff was first terminated to the agreement he signed on March 28, 2006 before signing the new agreement on or around May 7, 2007.

" In California it is well established that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortuous conduct toward a third person." (Ibid.) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

" Where a defendant makes false statements, honestly believing them to be true, but without reasonable grounds for such belief, he may be held liable for negligent misrepresentation, a form of deceit." ( Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, supra, 57 Cal. App.3d 104, 111; Muraoka v. Budget Rent-A-Car, Inc. (1984) 160 Cal. App. 3d 107, 119

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

11

1  [206 Cal Rptr. 476].) Cicone v. URS Corp, 183 Cal. App.3d 194;227 Cal Rptr. 887; 1986 Cal.
2  App. LEXUS 1804

3     " Fraud is a generic term [***4] which embraces all the multifarious means which human
4  ingenuity can devise and are resorted to by one individual to get an advantage over another. (1)
5  No definite and invariable rule can be laid down as a general proposition defining fraud, as it
6  includes all surprise, trick, cunning, dissembling, and unfair ways by which another is deceived.
7  ( Armstrong v. Wasson, 93 Okla. 262 [220 P. 643]. Cicone v. URS Corp, 183 Cal. App.3d
8  194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

9     "As has been said, fraud may be committed by the suppression of the truth as well as by
10 the suggestion of falsehood. It may consist in suppression of that which it is one's duty to declare
11 as well as in the declaration of that which is false" Wells v. Zenz, 83 Cal. App 137, 256 P. 484;
12 1927 Cal App. LEXUS 622

13     Plaintiff alleges that if the court were to pose one question to Defendants and Attorney
14 Meckley; If you did not wrongfully terminate Plaintiff why did you attempt to cover up or
15 void out the March 28, 2006 agreement?

16     " Deceit may be negative as well as affirmative arising out of the suppression of
17 information that should have been revealed, as well as by the expression of information that
18 is false." Agnew v. Cronin, 148 Cal. App 2d 117, 129-130, 306 P. 2d 527, 534 (1957)

19     " The defendant must have made an untrue representation as to a part or existing material
20 fact. Bily v. Arthur Young & Co., 3 Cal. 4th 370, 408 11 Cal Rptr. 2d 51 (1992)

21     Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 4, is a true and
22 correct copy of page 6 of Aramark' Sports LLC's answers to plaintiff employment
23 interrogatories evidencing Plaintiff was terminated on June 15, 2006 pursuant to the contract
24 signed on March 28, 2006.

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
   OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

1    Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 5, is a true and
2 correct copy of a email from James Chan to Victoria Litner the regional HR manager stating he
3 planned to request a doctor's note from Plaintiff when he returned to work, evidencing he knew
4 Plaintiff was still disabled.
5    Attached to the Declaration or Mark Antoine Foster attached hereto as Exhibit 6 is true and
6 correct copies of Plaintiff state disability check stubs submitted to Aramark and Defendant
7 Attorney Meckley in response to Defendant Meckley's Discovery showing plaintiff was disabled
8 on or around June 15, 2006
9    Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 7 is a true and
10 correct copy of the compromise and release agreement presented to plaintiff by the Law Offices
11 of Gray and Prouty evidencing plaintiff was coerced to sign the documents as a condition of
12 receiving his worker's compensation settlement of $5,500.

**4) Damages Suffered**

14    Defendants claim that Plaintiff fails to allege there was any damage resulting from the
15 reliance he alleges and how he has suffered any injury as a result of Defendants' actions.
16    Plaintiff alleges that he does show justifiable reliance and how he has suffered an injury as a
17 result of defendants' actions by confirming Defendants' intent to defraud, as they confirm the
18 intent in the ESC.
19    Plaintiff thereafter suffered and continues to suffer emotional distress and mental anguish
20 knowing Defendants attempted to and is still attempting to defraud him. Plaintiff also began to
21 suffer emotional distress and mental anguish on or around May 1, 2007, when Aramark
22 purposely withheld his worker's compensation payment of $5,500 to coerce him to sign the new
23 agreement. Defendants knew there was a good chance Plaintiff was suffering financially because
24 they knew he was receiving unemployment insurance because he was unemployed, and they

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

13

1  were paying into his claim, and knew he would be more susceptible to signing the agreement

2  because he was financially vulnerable.

3      Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 8 is a true and

4  correct copy of Plaintiff's UI claim filed with the Defendants.

5      Plaintiff also alleges that he began to suffer mental anguish and emotional distress when he

6  discovered that Defendant's attorneys Gray and Prouty and their third party administrators

7  Specialty Risk Services lied to the Worker's Compensation Appeals Board, stating that Plaintiff

8  filed an EEOC claim subsequent to agreeing to the worker's compensation settlement of $5,500,

9  as this was the reason why they had not settled the claim timely after they agreed to do. Plaintiff

10  alleges that the Defendants committed perjury to a state agency and to Plaintiff when they

11  committed this act because they knew Plaintiff had not filed an EEOC claim. Plaintiff alleges he

12  can report this to the Worker's Compensation Appeals Board if the Defendants do not do it

13  themselves.

14      Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 9 is a true and

15  correct copy of Gray and Prouty's Opposition to Plaintiff Readiness to Proceed, evidencing the

16  perjury.

17      Plaintiff alleges he also continues to suffer mental anguish and emotional distress due to

18  Defendants still at present continuing to deny the allegations of the wrongful termination and

19  disability discrimination, and insisting that Plaintiff resigned on his own, and that it was not an

20  involuntary resignation. Plaintiff is shocked and dismayed that the Defendants continue to insist

21  that the March 28 agreement is justified, as if they had a right to terminate Plaintiff pursuant to it

22  when they know that agreement was union connected, as it was part of the union collective

23  bargaining agreement with Aramark. Plaintiff was a union member, and Defendants knew they

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
    OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

14

1  were wrongfully terminating Plaintiff without informing the union prior to his dismissal and for

2  not offering Plaintiff a reasonable accommodation to his disability prior to his dismissal.

3  Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 10 is a true

4  and correct copy of page 5 of the employment interrogatories where evidencing Plaintiff's job

5  was union connected.

6  Defendants knew that the voluntary agreement /collective bargaining agreement did not

7  preempt state and federal laws regarding disabilities. Plaintiff alleges Defendants never in

8  writing or verbally offered Plaintiff a further reasonable accommodation before his termination,

9  as they failed to engage in the interactive process with Plaintiff.

10  Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 11 is a true

11  and correct copy of page 5 of the union's rules of the collective bargaining agreement,

12  evidencing Defendants are required to report any terminations.

13  Plaintiff alleges Defendants knew he was disabled on or around June 15, 2006 when he was

14  terminated for not returning to work on June 15, 2006.

15  Plaintiff alleges Defendants continuing to insist they did not wrongfully terminate Plaintiff

16  up to the present time is an insult to his intelligence, and he continues to suffer emotionally and

17  mentally because of their denial.

18  **5) Plaintiff' claims of mail fraud, wire fraud and conspiracy**

19  In response to Defendants motion to dismiss Plaintiff's claims of mail fraud, wire fraud and

20  conspiracy, due to Plaintiff not having a private right of action for these alleged crimes, Plaintiff

21  has moved to dismiss these claims.

22  Plaintiff does not contend he has a private right of action for these crimes, therefore for the

23  reasons above and in addition to the attorney general being the only one who can bring these

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

15

1  charges through an indictment or otherwise Plaintiff has filed a motion to dismiss these claims.

2  Attached to the Declaration of Mark Antoine Foster attached hereto as Exhibit 12 is a true

3  and correct copy of Plaintiff's Motion To Dismiss these claims.

4  **6) Plaintiff's claim for Intentional Infliction of Emotional Distress does state a claim**

5  **upon which relief can be granted because Plaintiff does allege conduct that was extreme**

6  **and outrageous**

7  Plaintiff cites Defendants' same law " In order to recover damages, the Defendants conduct

8  must be characterized as involving an "extreme and outrageous" invasion of another's mental

9  and emotional tranquility or as going beyond" a'' reasonable bounds of decency" Alcorn v.

10  Anbro Engineering, Inc. 2 Cal 3d 493, 498; Aqostini v. Strycula, 231 Cal App, 2d 804, 818

11  (1965); Perati v. Atkinson 213 Cal App 2d 472, 474 (1963O).

12  Plaintiff states on page 21 in paragraph 66 of his complaint how defendants acts were

13  outrageous intentional and malicious and done with reckless disregard, and how Defendants

14  knew defrauding plaintiff in the manner they did would certainly cause him to suffer severe

15  emotional distress and mental anguish.

16  Plaintiff also states just how outrageous Defendants actions were; Defendants knowing

17  Plaintiff had already suffered emotional and psychological injury due to the previous acts of the

18  Defendants while Plaintiff worked at the Carnelian Room, as evidence presented by Plaintiff to

19  Defendants by way of discovery proves Plaintiff's injuries, and that Defendants were aware of

20  those injuries.

21  Plaintiff also alleges that Defendants knew withholding his worker's compensation check to

22  coerce him to sign the new agreement knowing he was financially vulnerable was despicable and

23  outrageous.

24

25  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

16

**7) Plaintiff's claim for Negligent Infliction of Emotional Distress does state a claim upon which relief can be granted because Defendants Aramark Sports LLC does owe a duty to Plaintiff**

Plaintiff recognizes Defendant Aramark Corporation may not be liable of the alleged Negligent Infliction of Emotional Distress, although Aramark Sports LLC certainly is.

Aramark Sports LLC does owe a duty of care to Plaintiff as a corporation to not allow their executive managers to subject Plaintiff to their Intentional Infliction of Emotional Distress and Fraud and Intentional Deceit, among other things mentioned herein.

Plaintiff alleges that it was despicable conduct to allow their agents and managers to continue to cause Plaintiff emotional distress and mental anguish after already allowing them to injure Plaintiff while he was employed with them, which caused his mental disability.

Plaintiff alleges that Aramark Sports LLC is negligent and vicariously liable for the acts of their agents and managers, and knew or should have known the acts were being committed.

"In Pleasant v. Celli (1993) the court said that to determine liability for negligent infliction of emotional distress in any given case, several factors should be considered. The pertinent factors include foreseeabilty of the harm to plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for the breach, and the availability, cost and prevalence of insurance for the risk involved. Foreseeabilty is the touchstone of the emotional distress analysis. Since the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeabilty of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability, such duty or obligation must

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT    C-08-01336 MHP

17

1  necessarily be adjudicated only upon a case- by -case basis. Imposition of liability may be
2  warranted when there is a high degree of foreseeabilty of shock to the plaintiff and the shock
3  flows from an abnormal event."

4      Plaintiff alleges Defendants Aramark Sports LLC knew or should have foreseen the injury to
5  Plaintiff, and owed a duty to Plaintiff to not to allow more harm to be caused, and should have a
6  policy of preventing future harm to Plaintiff as a responsible corporation. Aramark Sports LLC
7  has a duty to exercise care and consequences to the community if it does not exercise care. There
8  is moral blame attached to Aramark Sports LLC's conduct, as it is immoral to employ and allow
9  managers to commit the acts Plaintiff alleges herein.

10     Plaintiff should be allowed to amend his complaint to dismiss Aramark Corporation as a
11 Defendant and redirect the alleged claim upon Aramark Sports LLC.

12     II.    CONCLUSION

13     Based on the foregoing, Plaintiff respectfully requests that Defendant's motion to dismiss
14 Plaintiff's First claim for Fraud and Intentional Deceit, his Fifth claim for Intentional Infliction
15 of Emotional Distress, and his Sixth claim for Negligent Infliction of Emotional Distress be
16 overruled, with leave to amend.
17 Date: April 2, 2008    Mark Antoine Foster, In Pro Per

25 PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION TO DIMISS PLAINTIFF'S COMPLAINT   C-08-01336 MHP

18