1  **Mark Antoine Foster, In Pro Per**
   **200 Corpus Cristie Road #A**
2  **Alameda, California 94502**
   **(415) 756-1611**
3  **(619) 646-3564**

*FILED*

*APR 17 PM 2:31*

4

5

6

7

8                **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10               **SAN FRANCISCO DIVISION**

11                              Case No.  **C-08- 01336 MHP**

12  **MARK ANTOINE FOSTER,**          **PLAINTIFF'S REPLY IN SUPPORT OF**
                                      **MOTION TO DISQUALIFY**
13               **Plaintiff,**        **ATTORNEYS ERIC MECKLEY,**
                                      **MELINDA REICHERT, SUE BOAG, AND**
14        **vs.**                      **MORGAN LEWIS & BOKIUS OPPOSING**
                                      **DEFENDANT'S OPPOSITION;MEMO**
15  **ARAMARK SPORTS, LLC and**        **OF PTS & AUT;DECLARATION OF**
    **ARAMARK CORPORATION,**           **MARK ANTOINE FOSTER IN SUPPORT**
16  **and DOES 1 Through 73**          **THEREOF AND EXHIBIT "A"**
                                      **ATTACHED THERETO**
17               **Defendants**
                                      **Date:    April 28, 2008**
18  _____/  **Time:   2:00 p.m.**
                                      **Location: Courtroom 15, 18th floor**

19                        **I. Introduction**

20        Plaintiff MARK ANTOINE FOSTER hereby submits his reply to Defendant's

21  Opposition to his motion to disqualify attorneys Eric Meckley, Melinda Reichert, Sue Boag and

22  Morgan Lewis and Bokius LLP as opposing council against him in the above titled action.

23              **MEMORANDUM OF POINTS AND AUTHORITIES**

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS     1
    OPPOSING DEFENDANT'S OPPOSTION
                                                    C- 08-01336 MHP

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................. 1

II.   REBUTTAL ARGUMENT.......................................................2

Plaintiff's Response To Defendant's Argument.........................................3

A.    Plaintiff May Lack Standing To Move To Disqualify MLB And its
      Attorneys Based On Any Alleged Conflict Of Interest, But Only In The
      Traditional Sense, Not In The Present Case, Due To Attorney
      Meckley's Breach Of Fiduciary Duty And Fraud And Intentional
      Deceit.................................................................................3

B.    Plaintiff' Does Not Lack Standing To Move To Disqualify MLB
      And Its Attorneys Based On The Possibility That Meckley May Be
      Called As A Witness In Any Of Plaintiff's Lawsuits, Because It
      Is Possible He May Be Called As A Witness In His Lawsuits...............5

C.    Attorney Meckley Does Owe Plaintiff A Fiduciary Duty ....................5

D.    It Is Not Undisputed That Neither MLB Nor Meckley Has Perpetrated
      A Fraud Against Plaintiff...........................................................9

E.    Disqualification Would Not Be Inappropriate In The Present Case...........18

III. CONCLUSION.......................................................................20

1

## II. Rebuttal Argument

2       Defendants quote in their opposition on page 1:

3       "[Motions to disqualify counsel often pose the very threat to the integrity of the judicial

4    process that they purport to prevent. They can be used to harass opposing counsel, to delay the

5    litigation, to intimidate an adversary into accepting settlement on otherwise unacceptable terms,

6    or for other strategic purposes."

7       After citing this quote, Defendants accuse Plaintiff of ignoring well established law, that

8    he cites inapposite authority, and that he relies upon completely unjustified, unsubstantiated and

9    outrageous accusations against MLB and its attorneys. Defendants continue stating that

10   Plaintiff's motion is entirely lacking in any substantive merit, and his motion is nothing more

11   than harassment, a litigation tactic, plain and simple, and should be denied in its entirety.

12      Plaintiff totally disagrees with the Defendant's accusations and alleges that what the

13   Defendant fails to understand is that Plaintiff is not so versed in the law          as Plaintiff is in

14   Pro Per, and has had to really study the law regarding his case, civil rights and employment

15   discrimination. Plaintiff alleges that even if he did know how to use a motion to disqualify as a

16   litigation tactic and harassment, he would not, because he would not deliberately falsely accuse

17   someone of any thing wrong, and surely he would not accuse an attorney of fraud and breach of

18   fiduciary duty if he did not truly know or believe it to be so.

19      Plaintiff believes that what the Defendants also fails to understand, and what those years

20   spent in law school probably doesn't teach, is that the law is also common sense and protects the

21   common man as well as those that are fortunate to be rich and can afford "high powered

22   attorneys" such as MLB.

23      Plaintiff alleges that Attorney Meckley got caught in a wrong and is looking for a way

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS          2
     OPPOSING DEFENDANT'S OPPOSTION

                                                              C- 08-01336 MHP

1 | out. He wants to give the impression that Plaintiff is "making this all up" or doesn't understand

2 | the law or is misinterpreting the law. Plaintiff admits that he may have misinterpreted some of

3 | the law pertaining to this case, but Attorney Meckley can be assured that Plaintiff has correctly

4 | interpreted enough law to know that he can prove his claims.

5 | Plaintiff also alleges he may have not recognized some law, may have cited some

6 | inappropriate authority, but none of this was deliberate. Plaintiff assures the defendants that he

7 | would not play these kinds of games, and he is totally confident in just telling the truth, because

8 | he knows the truth will surface and the court will see what is really going on in this case.

9 | Furthermore, in Plaintiff's original case regarding the employment discrimination, neither

10 | Attorney Meckley nor Sue Boag presented any evidence supporting their client Aramark's

11 | defenses in the whole year that this case has been assigned to them. Plaintiff alleges that after

12 | Attorney Meckley was not successful in being able to scare him off with intimidation and fear

13 | and threats, he resulted to engaging in a fraudulent act with his client to deprive Plaintiff of his

14 | rights, as Plaintiff will prove as this case proceeds.

15 | **Plaintiff's Response To Defendants' Argument**

16 | **A.      Plaintiff May Lack Standing To Move To Disqualify MLB And Its Attorneys**

17 | **Based On Any Alleged Conflict Of Interest, But Only In The Traditional Sense, Not In The**

18 | **Present Case, Due To Attorney Meckley's Breach Of Fiduciary Duty and Fraud And**

19 | **Intentional Deceit**

20 | Defendants state in section A. on page 3 of their opposition that "Generally, only clients

21 | and former clients of the attorneys at issue have standing to bring a disqualification motion based

22 | on a conflict of interest".

23 | Plaintiff alleges that Defendants are correct, although the key word is "generally", and

24 |

25 | PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
OPPOSING DEFENDANT'S OPPOSTION

3

C- 08-01336 MHP

1  the problem here is that Attorney Meckley denies that he has committed fraud and a breach of

2  fiduciary duty against plaintiff, and the fact that he even owes Plaintiff a duty, and based on this

3  denial, he depends on law as a defense that he is not entitled to. In Plaintiff's complaint against

4  MLB and Eric Meckley as an individual, Plaintiff alleges fraud and intentional deceit and breach

5  of fiduciary duty, which as a result has created a conflict of interest between him and MLB.

6      Plaintiff alleges that Attorney Meckley has created a conflict of interest because he has

7  breached his fiduciary duty as an attorney when he presented a known fraudulent document to

8  the court and to plaintiff, as he preserved and presented the document in behalf of his client,

9  knowing it was to deprive Plaintiff of a wrongful termination and disability discrimination claim.

10  "It was a grave breach of Professional Ethics on part of claimant's Attorney's to present

11  expert testimony knowing or suspecting it to be false and misleading in the absence of full

12  disclosure of the manner in which test of allegedly defectively designed winch was conducted."

13  Xanudu Maritime Trust V. Meyer N.D. CAL 1998, 21 F. Supp 2d. 1104.

14      Plaintiff alleges that Defendant Meckley motive was to please his client and impress his

15  employer, as he overreached to accomplish this.

16      Plaintiff alleges and acknowledges that he can't move to disqualify in the traditional

17  sense, as to what a conflict of interest is, as mentioned herein. Plaintiff is simply saying that

18  because he reasonably believes that Attorney Meckley and his client has committed a wrong

19  against him, and in light of the circumstances neither Attorney Meckley or any of MLB attorneys

20  should be representing council for themselves, nor Aramark against Plaintiff. Plaintiff feels

21  totally uncomfortable pleading his claims of fraud and breach of fiduciary duty against the

22  attorneys whom if has alleged these claims against. It would be unethical to allow them to act as

23  council against Plaintiff. Plaintiff alleges that Attorney Meckley has already breach his fiduciary

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
   OPPOSING DEFENDANT'S OPPOSTION

                                                                        4

                                                    C- 08-01336 MHP

duty as an attorney against him and does not trust Attorney Meckley nor any of the attorneys employed at MLB.

**B. Plaintiff Does Not Lack Standing To Move To Disqualify MLB And Its Attorneys Based On The Possibility That Meckley May Be Called As A Witness In Any Of Plaintiff's Lawsuits, Because It Is Possible He May Be Called As A Witness In His Lawsuits**

Again, Defendants deny that they have committed fraud and intentional deceit and a breach of fiduciary duty against Plaintiff, and their defense is based on that denial. There can be and is a conflict of interest between the third party and the opposing attorney in this present case.

" In California it is well established that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person" Cicone v. URS Corp, 183 Cal. App. 3d 194; 227 Cal Rptr. 887;1986 Cal. App. LEXUS 1804 (1986)

"Thus the case law is clear that a duty is owned by an attorney not defraud another, even if that other is an attorney negotiating at arm's length." Cicone v. URS Corp, 183 Cal. App. 3d 194; 227 Cal Rptr. 887;1986 Cal. App. LEXUS 1804 (1986)

**C. Attorney Meckley Does Owe Plaintiff A Fiduciary Duty**

Plaintiff is informed, believes and therefore alleges that where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts, and a duty to disclose facts where the party having knowledge of the facts in a fiduciary or a confidential relationship. A fiduciary or a confidential relationship exists whenever under the circumstances trust and confidence reasonably may be and is reposed by one person in the integrity and fidelity of another.

1    Plaintiff alleges that because Attorney Meckley suppressed the fact that the presented

2    agreement' purpose was to wrongfully shield his client from a claim of wrongful termination and

3    disability discrimination, he failed to disclose a fact he was obligated to disclose, to the court and

4    to Plaintiff, and as an attorney, knowing it was going to unrightfully deprive Plaintiff of his

5    property or any remedy in the form of monetary gain entitled to Plaintiff regarding his claims.

6    "The extent of liability an attorney may incur toward third persons, while the attorney is

7    acting of behalf on a client, has been the subject of divergent opinion in various American

8    Jurisdictions, [***10] the traditional view being that an attorney may not generally be held liable

9    to third persons because he is not in privity with them, and owes them no duty to act with care.

10   (See Attorneys Liability to Third Parties, 45 A.L.R. 3d 1177, 1181.) A typical statement of this

11   approach is that 'an attorney is not liable to third persons for acts committed in good faith in

12   performance of professional activities as an attorney for his client. If, however, an attorney is

13   actuated by malicious motives, or shares the illegal motives of his client, he may be personally

14   liable with the client for damage suffered by a third person as the result of the attorney's actions'

15   (Fns. Omitted) (7 Am. Jur.2d, Attorney's, § 196, p. 161 (1963).) (Roberts v. Ball, Hunt, Hart,

16   Brown & Baerwitz, supra 57 Cal App. 3d 104, 109.) Cicone v. URS Corp, 183 Cal. App.3d

17   194;227 Cal Rptr. 887; 1986 Cal. App. LEXUS 1804

18   Defendant Attorney Meckley knew he was construing to help carryout a scheme help

19   shield his client from Plaintiff's claim of wrongful termination and disability discrimination.

20   Defining breach of fiduciary duty –

21   To determine breach of duty's existence, a determination is made as to the standard of

22   care and an evaluation of the defendants conduct in reflection of that determined standard. If

23   duty of care by the defendant can be proven, using the reasonable care standard, then negligence

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
     OPPOSING DEFENDANT'S OPPOSTION

6

C- 08-01336 MHP

1  can be an issue. The defendant needs to have recognized the risks created by her on his acting

2  and to understand what could happen from those risks taken. The general standard of care is then

3  applied to the specific circumstances of the situation and the jury must establish whether the

4  defendant's conduct was negligent. When the courts decides if duty was owned they consider the

5  objective or subjective standard. Objective standard considers the defendants actions against a

6  hypothetical reasonable person. With the subjective standard, the court considers whether the tort

7  feasor, the person who is allegedly negligent, believes her or his actions were reasonable. For

8  example, if someone attempts to rob an elderly woman in a parking lot and she happens to have a

9  gun and shoots her attacker, the objective standard would ask if a reasonable person would have

10  acted the same way. In the subjective standard the courts would ask the elderly woman if she

11  though she was acting in a reasonable fashion.

12      If a plaintiff, is unable to prove the defendant's negligence because pertinent information

13  is inaccessible, them the plaintiff can rely on res ipsa loquitur, as this means is that the act speaks

14  for itself and needs no other information to determine negligence. But, in order to use this, the

15  Plaintiff must prove two things: The event which injured themselves only happens when

16  negligence has occurred; the item or instrument which caused the injury was under exclusive

17  control of the defendant and the plaintiff injuries were not due to their own act.

18      The Key Factor to remember in considering negligence is whether the duty of care was

19  even owed to the Plaintiff, by the defendant and whether or not that duty was breached.

20      Defendant Attorney Meckley owed plaintiff a duty of care as an Attorney to uphold law

21  and not engage in a fraudulent activity he knew would deprive plaintiff of his rights. Plaintiff has

22  presented credible evident supporting his claims against defendant Attorney Meckley but can

23  also rely on res ipsa loquitur, as the acts of Defendant Attorney Meckley speaks for itself and

24

1 | Plaintiff needs no other information to determine negligence.

2 |     If the Attorney's misconduct involved an illegal transaction, the court may consider as a

3 | mitigating factor the fact that the Attorney was merely a "follower", rather than an instigator in

4 | the transaction. The Court may also consider the fact that the transaction occurred in connection

5 | with the Attorney's personal affairs, and that the Attorney did not stand to benefit personally

6 | from the transaction [see in re Chira (1986) 42 cal 3d 904, 909, 231 Cal Rptr. 560, 727 P. 2d

7 | 753].

8 |     Plaintiff alleges that Defendant Attorney Meckley was an instigator not merely a

9 | "follower" in that he knew or had knowledge of the falsity of the document (VRA) and knew

10 | presenting it in the manner in which he did was deceitful, therefore there are no mitigating

11 | circumstances defendant Attorney Meckley can claim. Also Defendant Attorney Meckley's

12 | motive was to fraudently shield his employer from a wrongful termination claim, and impress his

13 | client and employer.

14 |     "An Attorneys presentation to court of statement of fact which is known to be false and

15 | which tends to mislead court violates this section, whether or not attorney is successful in

16 | misleading court, and intent to secure determination based on false statement is presumed.

17 | Vickers V. State Bar of Cal. (1948) 196 P.2d 10, 32 Cal 2d 247; Pickering V. State Bar of

18 | California (1944) 148 P.2d 1.24 Cal 2d 141.

19 |     Although Attorneys may not present evidence they know to be False or assist in

20 | perpetrating known frauds on the court, they may ethically present evidence that they suspect,

21 | but do not personally know is false. People v Riel (2000) 96 Cal Rptr. 2d 1, 22 Cal $th 1153, 998

22 | F.2d 969, Rehearing Denied, Certiorari Denied 121 S. CT. 803, 531 U.S. 1087. 148 L. ED 690

23 | Disciplinary Rule 7-102 of the ABA states (A) (2) In his representation of a client, a lawyer shall

24 |

25 | PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
OPPOSING DEFENDANT'S OPPOSTION

**8**

1  not knowingly advance a claim or defense that is unwarranted under existing law, except that he

2  may advance such claim or defense if it can be supported by good faith argument for an

3  extension, medication, or reversal of existing law. He also may not:

4  (3) Conceal or knowingly fail to disclose that which he is required by law to reveal,

5  (4) Knowingly use perjured testimony of false evidence

6  (5) Knowingly make a false statement of law or fact

7  (6) Participate in the creation or preservation of evidence when he knows or it is obvious that the

8  evidence is false

9  (7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

10  (8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

11    In determining discipline, the Supreme Court may take into account whether the attorney's

12  misconduct was negligent, as opposed to being intentionally fraudulent, the former warranting

13  less severe discipline than the latter. Waysman V. State Bar (1986) 41 Cal 3d 452, 458 224 Cal

14  Rptr. 101,714, P.2d 1239.

15    Plaintiff alleges that defendant Meckley acts were intentional Fraud & Deceit, as he knew he

16  was participating in a fraudulent Scheme, and as he had knowledge of the falsity and the fraud.

17  Plaintiff alleges Attorney Meckley was negligent in his duties as an attorney.

18  **D. It Is Not Undisputed That Neither MLB Nor Meckley Has Perpetrated A Fraud**

19  **Against Plaintiff**

20    Defendants state in section D. on page 5 of their opposition, "The alleged "fraud" consists

21  solely of Defendants' council serving a mediation brief on Plaintiff and a mediator attorney

22  Bruce Highman in connection with the Bar Asc. Of San Francisco which parties were ordered to

23  attend by the San Francisco Superior Court"

24

1     Plaintiff disagrees with this accusation, because first, the alleged fraud does not solely consist

2 on Attorney Meckley serving the mediation brief on Plaintiff and the mediator, it was also served

3 or presented to the State Bar and San Francisco Superior court, which is a tribunal. The Early

4 Settlement Program is not merely sponsored by the State Bar and San Francisco Superior Court,

5 it is also a court ordered program, governed by laws of the court, which makes it a tribunal.

6 Therefore Attorney Meckley and his client Aramark presented a false document to the court.

7     Second, Plaintiff has alleged other facts to support his claims of fraud, such as, the

8 knowledge of falsity, intent, circumstantial evidence and probability, among other things. The

9 court only needs to look at Plaintiff's pleadings, those filed in this court as well as the ones filed

10 in San Francisco Superior court.

11     Defendants continue by stating or implying what was in their mediation brief, regarding how

12 Plaintiff voluntary quit on his own because he signed and agreed to the VRA agreement entered

13 into on March 28, 2006, and how Miller called him to remind him that he was scheduled to

14 return to work on June 15, 2006 and that plaintiff admitted to never returning Miller's phone call,

15 and because Plaintiff failed to return to work on June 15, 2006 he effectively resigned his

16 position, and his employment with Aramark ended that same date, and that Plaintiyff later

17 confirmed his resignation in a signed writing and a true copy of it was attached as Exhibit 6.

18     Here Defendants want to present the notion that Plaintiff voluntarily resigned on his own, to

19 imply that his resignation was not an involuntary resignation but a voluntary resignation, which

20 is a false fact, in that it is fabricated and not founded in truth, and exists only in assertion and is a

21 deceitful semblance of a fact.

22     Plaintiff alleges Aramark knew, and more importantly Attorney Meckley knew that because

23 Plaintiff was terminated pursuant to the March 28, 06 agreement he was forced to quit due to his

24

25

1    disability, and that it was not a voluntary resignation, but an involuntary resignation, and

2    Plaintiff did not resign on his own or because he wanted to, but because he was forced to.

3        Defendants continue to state that the new VRA signed on or around May 7, 2007, and the

4    original VRA signed on March 28, 2006 both prove that Plaintiff was not constructively

5    discharged. Plaintiff alleges that this is another false fact, in that Defendants, as well as Attorney

6    Meckley knows that neither agreement proves that Aramark did not constructively discharge

7    Plaintiff, because they knew that plaintiff was constructively discharged on March 28, 2006

8    when he requested and was forced to take medical leave because of the harassment and

9    retaliation from Aramark, which constitutes being subjected to intolerable conditions at that time

10   on March 28, 2006, not June 15, 2006. Plaintiff was disabled on June 15, 2006, and was under

11   the care of his doctor, and the truth is at that time he was not being subjected to intolerable

12   conditions on June 15, 2006 because he was not working there. Plaintiff alleges that he *was*

13   subjected to disability discrimination and a wrongful termination on June 15, 2006, because

14   Aramark and Attorney Meckley knew Plaintiff was disabled, and knew that he was not offered a

15   reasonable accommodation, and knew they had not followed union connected procedures prior to

16   terminating him, They also knew that the March 28, 06 VRA did not preempt Aramark from

17   offering Plaintiff a reasonable accommodation to his disability, nor did it preempt Aramark from

18   following union rules before deciding to terminate Plaintiff pursuant to the March 28, 06 VRA.

19       "To establish constructive discharge, a plaintiff needs to show that a reasonable would have

20   found the conditions of her employ intolerable and that the employer either intended to force her

21   to resign or could have reasonably foreseen she would do as a result of its actions". Odgen v.

22   Waxworks

23       "To have a valid claim of constructive discharge, an employee need not have completely

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS          11
     OPPOSING DEFENDANT'S OPPOSTION
                                                              C- 08-01336 MHP

1  resigned from the job. It is sufficient if the employee establishes that, because of intolerable

2  conditions; he or she needed to remove himself or herself from the job (for example, by electing

3  to go on disability retirement) and thus was effectively constructively discharged." Colores v.

4  Board of Trustees of Cal. State University (2003) 105 Cal App. 4th 1293, 1316-1318, 130 Cal

5  Rptr. 2d 347

6      There is no argument based on the interpretation of the Voluntary Resignation Agreement(s),

7  and there is no mistaken belief on Plaintiff's part that the Defendants presentation and

8  interpretation of the evidence is different, in that, it is the same, the only difference is that

9  Plaintiff is telling the whole truth and the Defendants are not. Both parties agree Plaintiff

10  resigned pursuant to the VRA Plaintiff signed on March 28, 06, but what the Defendants are not

11  revealing or admitting is that terminating Plaintiff pursuant to the March 28, 06 VRA was wrong,

12  and that is the sole purpose of the new VRA, to cover this fact up.

13      a)  A Further Explanation of Attorney Meckley's Knowledge Of Falsity

14  1.      Plaintiff alleges that if Aramark and Attorney Meckley is stating or implying that the

15          presentation of the new VRA in the mediation was just to confirm his client didn't

16          constructively discharged plaintiff on June 15, 2006, this is invalid because Plaintiff

17          constructive discharge occurred on March 28, 06, not June 15, 06. Plaintiff also

18          alleges that:

19  2.      If Aramark and Attorney Meckley is stating or implying that the new VRA was just

20          to confirm Plaintiff resigned pursuant to the March 28, 06 VRA, this is invalid,

21          because the new VRA was not needed to confirm this fact as the March 28, 06

22          agreement already confirmed this fact

23  3.      If Aramark and Attorney Meckley is stating or implying that the new VRA was to

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
    OPPOSING DEFENDANT'S OPPOSTION

12

    C- 08-01336 MHP

1        confirm that Plaintiff was not constructively discharged on March 28, 06, this is

2        invalid because Plaintiff was constructively discharged on March 28, 06.

3     Therefore, Plaintiff alleges that neither the new VRA signed on or around May 7, 07, or the

4 March 28, 06 VRA proves Aramark did not constructively discharge Plaintiff.

5     Plaintiff alleges that if Attorney Meckley claims he had no knowledge as to how the new

6 VRA was obtained, he still had knowledge that Plaintiff was terminated pursuant to the March

7 28, 06 VRA (which he admits) and that his client terminated Plaintiff because he failed to return

8 to work on June 15, 2006, (which he admits). Therefore Attorney Meckley knew his client has

9 subjected Plaintiff to a wrongful termination and disability discrimination, and he knew the new

10 VRA's purpose was to void-out the March 28, 06 agreement and/or to cover-up the fact that the

11 terminating Plaintiff pursuant to the March 28, 06 VRA proved that Aramark's termination of

12 Plaintiff was wrong, because it subjected Plaintiff to a wrongful termination and disability

13 discrimination.

14     Plaintiff alleges that the new VRA was not to confirm that his client did not constructively

15 discharge Plaintiff, nor was it to confirm that Plaintiff resigned to the March 28, 06 VRA, it was

16 obtained to create the false fact that Plaintiff termination was a "voluntary quit" as opposed to it

17 being an "involuntary quit", as his termination was an involuntary quit, because he was forced to

18 resign because of his disability.

19       "A disabled claimant may bring suit under the California Fair Employment and Housing

20 Act (FEHA) Gov. Code 12900 et seq. for employment discrimination Government Code 12940

21 subd.(a) can establish a prima facie case by proving that (1) he or she suffers from a disability;

22 (2) he or she is a qualified individual; and (3) he or she was subjected to an adverse employment

23 action because of the disability." Jensen v. Wells Fargo Bank 85 Cal App 4th 243, 102 Cal Rptr

24

25 PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
OPPOSING DEFENDANT'S OPPOSTION

13

C- 08-01336 MHP

1    2d 55 [Dec 2000]

2    "To prevail on a claim of unlawful discharge under the ADA the plaintiff must establish

3    that he is a qualified individual with a disability and that the employer terminated him because of

4    his disability." Copper v. Neiman Marcus Group, 125 F. 3d 786, 790 (1997) Humphrey v.

5    Memorial Hospital ASSn. 239 F. 3d 1128 9th Cir 2001

6    Aramark and Attorney Meckley knew Plaintiff had been subjected to disability

7    discrimination, because they knew that 1) the only action Aramark initiated to secure Plaintiff's

8    employment was Tim Miller calling Plaintiff to inform him that he was scheduled to return to

9    work on June 15, 2006, which was not offering Plaintiff a reasonable accommodation; 2) they

10   also knew Plaintiff was disabled on or around June 15, 2006, and 3) they knew Plaintiff's

11   position was union connected, and Aramark terminated Plaintiff without adhering to union rules

12   regarding terminating union employees, pursuant to the collective bargaining agreement

13   Aramark had with the union, therefore they knew Plaintiff had been subject to a wrongful

14   termination.

15   "American with Disabilities Act (ADA) does not require an employee to show that a leave of

16   absence is certain or even likely to be successful to prove that it is a reasonable accommodation

17   under the ADA." ADA of 1990 101(8) 42 U.S.C.A. 1211(8), Humphrey v. Memorial Hosp. Assn

18   "Once an employer becomes aware of the need for an accommodation of employees

19   disability, the employer has a mandatory obligation under the ADA to engage in an interactive

20   process with the employee to identify and implement appropriate reasonable accommodations."

21   42 U.S.C.A. 12101 et seq.

22   Defendants, specifically James Chan and Vicki Litner, failed to engage in the interactive

23   with plaintiff to identify any further possible reasonable accommodations for plaintiff's disability

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
     OPPOSING DEFENDANT'S OPPOSTION

**14**

1    prior to terminating his employment.

2    "Employers who fail to engage in the interactive process with disabled employee to

3    identify and implement appropriate reasonable accommodations in good faith face liability for

4    the remedies imposed by the ADA if a reasonable accommodation would have been possible."

5    42 U.S.C.A 12101 et seq.

6    Defendants had an affirmative duty under the ADA and California Fair Employment and

7    Housing Act to explore further arrangements to offer a reasonable accommodation for plaintiff

8    before terminating him, although defendants had allowed plaintiff a disability leave, the

9    accommodation was ineffective and a further accommodation would have been appropriate. See

10    Humphrey v. Memorial 1731 (6).

11    "Thus, the employer's obligation to engage in the interactive process extends beyond the

12    first attempt at accommodation and continues when the employee asks for a different

13    accommodation or when the employer is aware that the initial accommodation is failing and

14    further accommodation is needed. This rule fosters the framework of cooperative problem-

15    solving contemplated by the ADA, by encouraging employers to seek to find accommodations

16    that really work, and by avoiding the creation of a perverse incentive for employees to request

17    the most drastic and burdensome accommodation possible out of fear that a lesser

18    accommodation might be ineffective." Humphrey v. Memorial Hosp. Assn.

19    Defendants Aramark Sports, L.L.C. and Aramark Corporation, failed to engage in the

20    interactive process and it was their responsibility to offer plaintiff a further reasonable

21    accommodation prior to terminating him. It was not plaintiff's responsibility to request one

22    before he was fired, it was the defendants' responsibility to offer plaintiff a further

23    accommodation due to defendants being under a continuing duty to offer a reasonable

24

25    PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
OPPOSING DEFENDANT'S OPPOSTION

1   accommodation to a disabled employee. See Huprhey v. Memor.

2       Neither James Chan or Victoria Litner or anyone from Human Resources ever broached the

3   subject of modifying plaintiff's accommodation before terminating him. For example, plaintiff

4   was never offered an extension of his leave or offered to place plaintiff in a vacate position in the

5   reasonable future. SEE Humphrey v. Metro, 42 12111 (9) (A)(B)

6       Furthermore, if Aramark and Attorney Meckley are stating or implying that the new VRA

7   was to confirm that Plaintiff was terminated pursuant to the March 28, 06 VRA , and that the

8   March 28, 06 VRA justifies or gave Aramark the right to terminate Plaintiff because he signed

9   and agreed to it thus terminating himself, this is invalid, because Aramark and Attorney Meckley

10  knew that just because he signed the March 28, 06 VRA, it did not give Aramark the right to

11  terminate Plaintiff under the circumstances, specifically because Plaintiff was disabled on or

12  around June 15, 06, and was not offered a reasonable accommodation, due to the fact that no one

13  at Aramark engaged into an interactive process with Plaintiff to offer him a reasonable

14  accommodation. Aramark and Attorney Meckley also knew Plaintiff was wrongfully terminated.

15      Plaintiff alleges that Aramark and Attorney Meckley knew terminating Plaintiff pursuant to

16  the March 28, 06 VRA was wrong, plain and simple. So for Attorney Meckley and Aramark to

17  present the new VRA to show or imply that Plaintiff's termination was voluntary - because he

18  elected to terminate himself because he signed the March 28, 06 VRA, is a misrepresentation of

19  material fact and a false fact, made with the intent to defraud.

20      Plaintiff alleges that Aramark and Attorney Meckley knew these facts because they had the

21  evidence to know, and that's why they proactively tried to cover it up, and they are still trying to

22  cover it up.

23      Furthermore, Plaintiff alleges that Attorney Meckley excuse for presenting the new VRA in

24

25  PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
    OPPOSING DEFENDANT'S OPPOSTION

16

    C- 08-01336 MHP

1    the mediation is not a plausible excuse or answer, as it may appear to be. His purpose is to shield

2    the fact that he himself engaged in a fraudulent misrepresentation with his client Aramark. His

3    answer is invalid, as he knows a constructive discharge by law occurs when an employee is

4    subject to intolerable conditions and is forced to resign by either quitting or taken a medical

5    leave. Aramark and Attorney Meckley is stretching the meaning of a constructive discharge to fit

6    in their reality and definition so they can claim they had no intention of defrauding Plaintiff of

7    his disability discrimination and wrongful termination claims. Aramark and Attorney Meckley is

8    trying to instruct or lead this court to believe as to what a constructive discharge is and that their

9    reasoning  for them presenting the new VRA is sound based on their constructive discharge

10   notion. It is clear that Attorney Meckley and Aramark have never, till present, addressed the

11   issue of wrongful termination and disability discrimination, which they accuse Plaintiff of

12   rambling on about. Why not address it and be done with it? Plaintiff believes that if Attorney

13   Meckley and Aramark can persuade this court to see things their way with false facts and

14   twisting the law, then he and Aramark can shield himself and get "off the hook". There are many

15   claims against the Defendants, and the validity of Plaintiff's claims rests primarily on the two

16   agreements, and their purpose.

17       It is clear and undisputed that 1) the new VRA was not needed by Aramark or Attorney

18   Meckley, as the March 28, 06 VRA would have sufficed, and 2) the new VRA was in question

19   from the outset, not only by Plaintiff, but his worker's compensation attorney, Mary Lou

20   Williams, and 3) the language used to obtain it constituted coercion by Aramark and the Law

21   Offices of Gray and Prouty, and 4) there was no need for the Law Offices of Gray and Prouty to

22   present the new VRA to Plaintiff after Plaintiff had already not been employed by Aramark for

23   over a year, and also because Gray and Prouty was not connected to the wrongful termination

24

1  and disability discrimination situation and had already agreed to settle the worker's

2  compensation case with Plaintiff, and 5) the document showed up somewhere, ( in the

3  mediation) as Plaintiff expected that it would after he discovered the disability discrimination

4  and wrongful termination and the cover-up.

5  Attached to the Declaration of Mark Antoine Foster as Exhibit "A" is a true and correct copy

6  of the correspondence between Foster and his worker's compensation attorney Mary Lou

7  Williams, evidencing the states of mind as to the suspiciousness of the new VRA.

8  ### E.  Disqualification Would Not Be Inappropriate In The Present Case

9  Plaintiff reiterates, he is not using his motion to disqualify as a strategic purpose, maybe

10  this is something Attorney Meckley would do, not Plaintiff, and he does not have to. Attorney

11  Meckley claims that a disqualification would pose an undue hardship on his innocent client who

12  must bear the costs of finding another attorney. Plaintiff alleges that his client is far from

13  innocent and far from being subjected to a financial hardship, as they are a 6 billion dollar

14  corporation.

15  Aramark and Attorney Meckley go on to say that Plaintiff has a long history of frivolous

16  lawsuits, administrative claims and frivolous motions. Here Defendants are looking to discredit

17  Plaintiff because they have no defense to their actions. Plaintiff alleges that he does not have not

18  one frivolous lawsuit pending, all of Plaintiff's lawsuits against Aramark, their agents and

19  Plaintiff previous landlord Operation Dignity, an organization that Plaintiff discovered was

20  illegally evicting homeless U.S. Veterans while he was enrolled in their program, are all sound.

21  Plaintiff's trial against Operation Dignity is August 22, 2008, being judged by the Honorable

22  Stephen Dombrink. Operation Dignity's council could not dismiss Plaintiff's complaint although

23  they tried with frivolous defenses. Operation Dignity's motion to strike Plaintiff's punitive

24

25

1    damages was also denied as Plaintiff filed an opposition to their motion. Plaintiff's original case

2    pending in this court was also set for trial for May 19, 2008, until Defendants removed it.

3    Plaintiff also filed a worker's compensation claim against Aramark and prevailed, and a wage

4    claim against Aramark with the department of Industrial Relations and the State Comissioner and

5    prevailed, as Aramark was denying meal breaks and unlawfully deducting money from

6    Plaintiff's pay while he was employed at the Carnelian Room. Plaintiff will also be happy to

7    share this information with the court

8         Defendants also mention Plaintiff's conviction as it relates to aiding and abetting in mail

9    fraud. Plaintiff has no problem with Defendants mentioning this, although it is unnecessary and a

10   blatant attempt to further discredit Plaintiff. Plaintiff made a misstate aiding his brother who

11   unfortunately has a problem. Plaintiff paid his dues, did his time and has not been in trouble

12   since. What Attorney Meckley doesn't say an does not know is that Plaintiff is a good man, who

13   was elected a trustee within the first three months of his incarceration, because the deputies saw

14   the goodness in him, as he replaced a trustee who had been trustee for over three years, what they

15   don't know is that Plaintiff was elected the instructor of the prison cooking school, teaching

16   other prisoners a valuable trade, what they don't say is that Plaintiff cooked for the warden and

17   the correctional officers who loved his talents, what they don't say is that Plaintiff was given the

18   maximum money allowed when he was released to help him get back on his feet, and what they

19   don't say, but knows, is that Plaintiff is a renowned chef that has received many awards from

20   food critics in Los Angeles, including a top 76 chef award from the Los Angeles Times

21   Magazine and newspaper. Defendants also don't mention that Plaintiff spent three years on

22   probation with a flawless record, no violations, and the fact that all of his Probation Officers

23   would speak highly of him. Defendants should not judge Plaintiff without getting all the facts,

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS       19
     OPPOSING DEFENDANT'S OPPOSTION
                                                        C- 08-01336 MHP

1   and even with these facts, they have no right to judge him, and the fact that Plaintiff was

2   convicted of aiding and abetting in mail fraud, it is irrelevant to this case.

3        CONCLUSION

4        Plaintiff prays that this court disqualify the attorneys mentioned in this motion in the face

5   of the evidence and the fact that the attorneys have had a whole year to produce a credible

6   defense, but has only mounted an ineffective campaign, with a lack of creditable statements and

7   paper trials that lead no where, and have only resorted to tactics to mislead the court and

8   Plaintiff. Defendants have also attempted to discredit Plaintiff in so many ways, as Plaintiff

9   expects more of the same twists, turns and tricky maneuvers.

10       Plaintiff alleges that it must be difficult for Defendants to have Plaintiff mount these

11   strong overwhelming claims, as he is in Pro Per, a African American and a "cook coming out of

12   the kitchen" to defend his name and honor against these attacks on his freedom, his right to work

13   without harassment and retaliation, and their attacks on his character. Plaintiff prays that the

14   court saves the public, the court system and him the untruths and lies continually being presented

15   to this court.

16       Plaintiff's motion to disqualify should be granted, and Plaintiff should not be subjected to

17   a sua sponte issue to show cause why he should not be sanctioned under rule 11 for filing his this

18   motion.

19   Dated: April 15, 2008                    Mark Antoine Foster, In Pro Per

20

21

22

23

24

25   PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEYS
     OPPOSING DEFENDANT'S OPPOSTION

                                                    C- 08-01336 MHP